

Scott A. Kamber (not admitted)
skamber@kamberlaw.com
David A. Stampley (not admitted)
dstampley@kamberlaw.com
KAMBERLAW, LLC
100 Wall Street, 23rd Floor
New York, New York 10005
Telephone:  (212) 920-3072
Facsimile:   (212) 920-3081

David C. Parisi (SBN 162248)
dcparisi@parisihavens.com
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
Telephone:  (818) 990-1299
Facsimile:   (818) 501-7852

Counsel for Plaintiffs
(Additional counsel listed on signature page)

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| JULIANN KING, Individually and on Behalf of a Class of Similarly Situated Individuals, | CASE NO. _____ **CV 11 2167** |
| Plaintiff, | JURY DEMAND |
| v. | CLASS ACTION COMPLAINT FOR VIOLATIONS OF: |
| GOOGLE, INC.; FLURRY, INC.; MOBCLIX, INC., | 1. COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030; |
| Defendants. | 2. COMPUTER CRIME LAW, CALIFORNIA PENAL CODE § 502 |
| | 3. TRESPASS TO CHATTEL; |
| | 4. UNFAIR COMPETITION, CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200; and |
| | 5. BREACH OF IMPLIED CONTRACT |

Plaintiffs make the following allegations based on their personal knowledge of their own acts and observations and, otherwise, upon information and belief based on investigation of counsel.

## I.  NATURE OF THE CASE

1.     Plaintiffs, users of mobile devices that run on Google's Android operating system, downloaded apps to their mobile devices, little knowing that the apps contained imbedded information-harvesting code from mobile advertising companies. Plaintiffs' use of the apps triggered the imbedded code, causing detailed information about Plaintiffs—including their whereabouts and unique mobile device identifiers—to be sent to the mobile advertising companies. The mobile advertising companies used Plaintiffs' personal information to track and profile Plaintiffs, to merge Plaintiffs' profiles with other profile databases, and to personally identify Plaintiffs.

2.     As a result, Plaintiffs suffered economic losses arising from the misappropriation of their personal information as well as the degradation in the performance of their mobile devices and wireless connectivity services.

## II.  PARTIES

3.     "Plaintiffs" shall mean the individual(s) so designated in the caption of this complaint, and who bring this complaint each on his or her own behalf and, collectively, on behalf of all others similarly situated (the putative "Class"). Plaintiff and the Class are deemed to be included in all references to "Consumers" or "Users" herein.

4.     Plaintiff Juliann King is a resident of the State of California who downloaded and used numerous free and paid apps (computer application software) to her Android Device (as defined herein) during the Class Period.

5.     The defendants identified below are collectively referred to herein as "Defendants."

6.     Defendant Google, Inc. ("Google") is a Delaware corporation with offices at 1600 Amphitheatre Parkway, Mountain View, California 94043. Google's agent for service of process is CSC–Lawyer's Incorporating Service, 2730 Gateway Oaks Drive, Suite 100, Sacramento, California 95833. Google is the owner of Admob, a mobile advertising network.

7.     Defendant Flurry, Inc. ("Flurry") is a Delaware corporation with its principal place of business at 282 2nd Street, Suite 2020, San Francisco, California 94105. Flurry's agent

1  for service of process is Simon Khalaf, Flurry's President and Chief Executive Officer, at 282

2  2nd Street, Suite 2020, San Francisco, California 94105. Flurry is an advertising content and

3  analytics provider for mobile apps.

4       8.     Defendant MobClix, Inc. ("Mobclix") is a Delaware corporation with its princi-

5  pal place of business at 1117 South California Avenue, Palo Alto, California 94304. Mobclix's

6  agent for service of process is C T Corporation System, 818 West Seventh Street, Los Angeles,

7  California 90017. Mobclix is a mobile ad exchange, functioning as an intermediary between

8  apps and numerous mobile ad networks and also providing analytics for mobile device apps.

9       **III.  JURISDICTION AND VENUE**

10       9.     This Court has subject-matter jurisdiction over this action pursuant to Title 28,

11  United States Code, Section 1331 and pursuant to the Class Action Fairness Act of 2005, 28

12  U.S.C. Sections 1332(a) and (d), because the amount in controversy exceeds $5,000,000.00 ex-

13  clusive of interest and costs, and more than two thirds of the members of the Class are citizens

14  of states different from those of Defendants.

15       10.     Venue is proper in this District under Title 28, United States Code, Section

16  1391(b) because Defendants' improper conduct alleged in this complaint occurred in, was di-

17  rected from, and/or emanated from this judicial district. Five of the defendants are California

18  corporations with their principal places of business in this district.

19       **IV.  ALLEGATIONS OF FACT**

20       11.     Plaintiffs here incorporate the recitations identify the parties, in paragraphs 4

21  through 8, above.

22       12.     "Android" is an operating system for mobile devices such as Android Devices,

23  notebook computers, and tablet computers ("Android Devices").

24       13.     On Feb. 15, 2011, Google's CEO announced that Google Android Device acti-

25  vations had reached 350,000 per day.

26       14.     Android Devices are capable of running apps that Consumers can download and

27  install on their Android Devices.

28       15.     Google reports that, as of Dec. 10, 2010, over 200,000 apps were available from

Class Action Complaint     3

the Android Market.

16.     Apps available in the Android Market relate to all aspects of Consumers' personal and business lives, with categories consisting of: Books & Reference, Business, Comics, Communication, Education, Entertainment, Finance, Health & Fitness, Libraries & Demo, Lifestyle, Live Wallpaper, Media & Video, Medical, Music & Audio, News & Magazines, Personalization, Photography, Productivity, Shopping, Social, Sports, Tools, Transportation, Travel & Local, Weather, Widgets, game-specific categories of Arcade & Action, Brain & Puzzle, Cards & Casino, Casual, Live Wallpaper, Racing, Sports Games, Widgets.

17.     As of the first quarter of 2011, the Android Market included 70,000 paid apps, for download *i.e.*, that require monetary payment by the User to acquire the app, and approximately 134,000 non-paid apps.

18.     Apps for Android Devices can be downloaded from third-party sites as well.

19.     Android Devices include the capability for apps to access User information that includes: location; unique device identifier; phone call log with information about placed and received calls; address book that connects to the User's friends, family members, business associates, and clients; browsing history about visited URLs; cached emails; photos taken with the built-in camera.

20.     Of the approximately 50,000 Android Device apps reviewed in June 2010 by a mobile security company, 20 percent requested access to private or sensitive information; five percent requested permission to place telephone calls; and three percent requested permission to transmit premium text messages. In addition, 383 apps had the ability to read and/or use another app's authentication credentials.

21.     In February 2011, a study surveying Android Device Apps reported that 28 percent of non-paid apps had the capability to access User contacts and 7.5 percent had the capability to access call logs.

22.     An October 2010[1] study analyzing transfers of User information by 30 Android

---

[1] *TaintDroid: An Information-Flow Tracking System for Realtime Privacy Monitoring on Smartphones*, William Enck, The Pennsylvania State University; Peter Gilbert, Duke Univer-

apps reported that half the apps transmitted the User's physical location and, in some cases, phone number, to Defendants, without disclosing such transfer to the User, for purposes unrelated to the advertised purpose of the app and, in most cases, in plain text (*i.e.*, unencrypted).

23.     Defendants effected this transfer by providing codes to the developers of apps, which the app developers incorporated into the program code for their apps, so that Users' execution of the apps would cause information transfers to Defendants to take place.

24.     Defendants used the personal information transferred from Users' apps to track Users' locations and Android Device activities and incorporate such information into Users' profiles.

25.     Defendants used the personal information transferred from Users' apps to merge with profile data from other sources to personally identify, or "de-anonymize" Users.

26.     With the personal information acquired, Defendants used the information to compile—in addition to the types of information listed in paragraph 19, above—personal, private, and sensitive information that included Consumers' video application viewing choices, web browsing activities, and personal characteristics such as gender, age, race, family status, education level, geographic location, and household income, even though none of the apps required  this information for app functionality.

27.     Defendants acquired personal information and compiled profiles that were unnecessary to the apps' stated functions but were useful to Defendants in their commercial compilation, use, and sale of Consumers' personal information.

28.     Plaintiffs downloaded paid and non-paid apps to their Android Devices, including apps that caused Plaintiffs' personal information to be transmitted to Defendants, who used Plaintiffs' personal information as described in paragraphs 22 through 27, above.

29.     Plaintiffs did not expect, receive notice of, or consent to Defendants' acquisition

---

sity; Byung-gon Chun, Intel Labs; Landon P. Cox, Duke University; Jaeyeon Jung, Intel Labs; Patrick McDaniel, The Pennsylvania State University; Anmol N. Sheth, Intel Labs, USENIX Association, 9th USENIX Symposium on Operating Systems Design and Implementation (OSDI '10), Oct. 6, 2010, p. 393.

of Plaintiffs' personal information.

30.     Plaintiffs did not expect, receive notice of, or consent to being tracked and pro-filed by Defendants; having their personal information sold and/or merged with personal pro-files from other sources; or being identified through de-anonymization processes by Defen-dants.

31.     Plaintiffs consider the information from and about themselves stored on their Android Devices and their uses of their Android Devices to be personal, private, confidential information.

32.     Reasonable consumers would consider the information from and about them-selves stored on their Android Devices and their uses of their Android Device to be personal, private, and confidential information.

33.     Reasonable consumers would not expect the actions described in paragraphs 29 and 30, above, to take place without notice to such consumer and without such consumers' af-firmative consent.

34.     Defendants' actions exceeded the scope of any authorization granted by Plain-tiffs at the time they installed the apps that transferred their information to Defendants.

35.     Defendants' actions were knowing, surreptitious, and without notice, and under-taken without authorization and exceeding authorization.

36.     Defendants misappropriated Plaintiffs' personal information.

37.     Defendants' acquisition of Plaintiffs' personal information has caused the loss or diminution of Plaintiffs' rights to determine for themselves how their personal information is to be shared, used, and kept confidential.

38.     Defendants owed a duty to Plaintiffs to provide reasonable notice, obtain rea-sonable consent, and respect the privacy and confidentiality of Plaintiffs' personal information from and about Plaintiffs' and their uses of their Android devices.

39.     Defendants, in their acquisition, use, merger, and disposition of Plaintiffs' per-sonal information, have breached their duty to Plaintiffs.

40.     Defendants' actions have caused harm, injury, and losses to Plaintiffs, as further

details herein.

41. Had Plaintiffs known of Defendants' practices regarding Plaintiffs' personal information, Plaintiffs would have had the opportunity: (i) decline to install the apps through which Defendants' acquired Plaintiffs' personal information, and chosen other apps that did not result in such transfers of personal information; (ii) decline to install non-paid, ad-supported apps and, instead, purchased and installed paid apps that did not result in such transfers of personal information; (iii) forego installation of apps.

42. Because Plaintiffs' acquired apps in value-for-value transactions in which they were not informed their personal information was being subjected to Defendants' taking, Defendants deprived Plaintiffs of the ability to make informed choices in the marketplace and unilaterally imposed hidden opportunity costs on Plaintiffs

43. The scarcity of Consumer information increases its value in the "infomediary" market. Defendants devalued Consumers' information by taking and propagating it, and thus diminished Plaintiffs' ability to monetize their own information through services that connect Consumers directly with advertisers.

44. The costs imposed on Plaintiffs are, through further discovery, discernable through measures that include a function of the value Plaintiffs could have received for their information by monetizing their information through services such as those referred to in paragraph 43, above, and a function of the cost of paid Android Device apps compared to non-paid, ad-supported apps that do not disclose the transfer of Consumers' personal information to entities such as Defendants.

45. Further, Defendants dispossessed Plaintiffs of the value of their Android Devices, as further detailed herein.

46. Consumers pay for Android Devices capable of certain processing speeds.

47. Consumers pay for wireless connectivity from carriers of wireless services.

48. Android Devices, like many smartphones and mobile devices, are resource-constrained, that is, their computer processing power, memory, battery charge, and connection speed, are limited in ways that the reasonable consumer would resource constrained, especially

on CPU, memory, and energy. are computers capable of a particular level of processing speed.

49.    The operation of the app-imbedded code through which Defendants' acquired Plaintiffs' personal information constituted an unauthorized utilization of and caused the diminution of the performance of Plaintiffs' Android Devices and connectivity services for those devices.

50.    Defendants were aware that that the operation of their app-imbedded code caused the utilization and diminished performance alleged in paragraph 49.

51.    Plaintiffs' experiences are typical of the experiences of Class Members.

## V.  CLASS ALLEGATIONS

52.    Pursuant to the Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3), Plaintiffs bring this action as a class action on behalf of themselves and all others similarly situated as members of the Class, defined as follows:

> All individuals residing in the United States whom, from December 1, 2008 to the date of the filing of this complaint, installed apps on their Android Devices, which apps, without notice to such individuals and authorization by such individuals, transferred to Defendants information from and about such individuals and their uses of their Android Devices.

53.    Excluded from the Class are Defendants, their legal representatives, assigns, and successors, and any entities in which Defendants have controlling interests. Also excluded is the judge to whom this case is assigned and the judge's immediate family.

54.    The "Class Period" is December 1, 2008 to the present.

55.    Plaintiffs reserve the right to revise this definition of the Class based on facts learned in the course of litigating this matter.

56.    The Class consists of millions of individuals and other entities, making joinder impractical.

57.    The claims of Plaintiffs are typical of the claims of all other Class Members.

58.    Plaintiffs will fairly and adequately represent the interests of the other Class Members. Plaintiffs have retained counsel with substantial experience in prosecuting complex

litigation and class actions. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of Class Members and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interests adverse to those of the other Class Members.

59.     Absent a class action, most Class Members would find the cost of litigating their claims to be prohibitive and would have no effective remedy.

60.     The class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

61.     Defendants have acted and failed to act on grounds generally applicable to Plaintiffs and other Class Members, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members.

62.     The factual and legal bases of Defendants' liability to Plaintiff and other Class Members are the same, resulting in injury to Plaintiff and all of the other Class Members. Plaintiff and other Class Members have all suffered harm and damages as a result of Defendants' wrongful conduct.

63.     There are many questions of law and fact common to Plaintiffs Members and those questions predominate over any questions that may affect individual Class Members. Common questions for the Class include, but are not limited to the following:

a.     whether Defendants, without notice and/or authorization, acquired, tracked, compiled into profiles, merged with other profile data, and sold information to which Plaintiffs enjoyed rights of possession superior to those of Defendants;

b.     Whether Defendants owe a duty to Plaintiffs;

c.     Whether Defendants' interactions with Plaintiffs constituted an implied contract;

d.     Whether Defendants breached their duty to Plaintiffs;

e.     Whether Defendants' taking and uses of Plaintiffs' personal information caused Plaintiffs to suffer harm and loss;

f.     Whether the operation of Defendants' code imbedded in apps consumed

1   resources of Plaintiffs' Android Devices and wireless connectivity, diminishing the utility and

2   value of those resources to Plaintiffs;

3         g.   Whether Defendants continue to retain and/or sell, valuable information

4   assets from and about Plaintiffs;

5         h.   What uses of such information were exercised and continue to be exer-

6   cised by Defendants; and

7         i.   Whether Defendants have been unjustly enriched.

8       64.   The questions of law and fact common to Plaintiffs predominate over any ques-

9   tions affecting only individual members, and a class action is superior to all other available

10   methods for the fair and efficient adjudication of this controversy.

11   **VI.  CLAIMS FOR RELIEF**

12       65.   Based on the foregoing allegations, Plaintiffs' claims for relief include the fol-

13   lowing:

14   **FIRST CLAIM FOR RELIEF**

15   **VIOLATIONS OF THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C § 1030, *et seq.***

16       66.   Plaintiffs incorporate the above allegations by reference as if fully set forth herein.

17       67.   Plaintiffs Android Devices were computers used for interstate commerce and/or

18   communication.

19       68.   Defendants, in causing their code to be imbedded in apps to be downloaded, in-

20   stalled, and executed by Users on those Users' Android Devices, knowingly cause the trans-

21   mission of a program, information, code, or command.

22       69.   Through the code Defendants caused to be imbedded in apps, intentionally and

23   without authorization caused damage of or exceeding $5,000 in the aggregate over a one-year

24   period.

25       70.   Defendants, by means of the code Defendants caused to be incorporated into

26   apps installed and executed by Plaintiffs, intentionally accessed Plaintiffs' Android Devices

27   without authorization and/or by exceeding authorization and thereby obtained information from

28   Plaintiffs' Android Devices.

71.     Further, as a result of such conduct, Defendants caused damage and loss to Plaintiffs, including damage and loss set forth in paragraphs 37 through 49, above.

72.     The aggregated loss and damage sustained by Plaintiffs includes economic loss with an aggregated value of at least $5,000 during a one-year period.

73.     Each of the Defendants perpetrated the acts and omissions set forth in this complaint through an organized campaign of deployment, which constituted a single act by such Defendant.

74.     Defendants are jointly and severally liable for the violations of the Computer Fraud and Abuse Act alleged herein.

75.     As a result of these takings, Defendants' conduct has caused a loss to one or more persons during any one-year period aggregating at least $5,000 in value in real economic damages.

76.     Plaintiffs have additionally suffered loss by reason of these violations, including, without limitation, the right of privacy.

77.     Defendants' unlawful access to Plaintiffs' computers and electronic communications has caused Plaintiffs irreparable injury. Unless restrained and enjoined, Defendants will continue to commit such acts. Plaintiff's and Plaintiffs' remedy at law is not adequate to compensate it for these inflicted and threatened injuries, entitling Plaintiffs to remedies including injunctive relief as provided by 18 U.S.C. § 1030(g).

## SECOND CLAIM FOR RELIEF

## VIOLATIONS OF THE COMPUTER CRIME LAW

## CALIFORNIA PENAL CODE § 502, *et seq.*

78.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

79.     Defendants violated California Penal Code § 502 by knowingly accessing, copying, using, made use of, interfering, and/or altering, data belonging to Plaintiffs.

80.     Defendants violated California Penal Code § 502 in that they caused the transmission to Users' Android Devices of code that caused Users' Android Devices to transfer Plaintiffs' personal information to Defendants without Plaintiffs' knowledge or consent.

81.     Defendants violated California Penal Code section 502(c)(1) by knowingly accessing and without permission altering and making use of data from Plaintiffs' computers in order to devise and execute business practices to deceive Plaintiffs into surrendering private electronic communications and activities for Defendants' financial gain, and to wrongfully obtain valuable private data from Plaintiffs.

82.     Defendants violated California Penal Code section 502(c)(2) by knowingly accessing and without permission taking, or making use of data from Plaintiffs' computers.

83.     Defendants violated California Penal Code section 502(c)(3) by knowingly and without permission using and causing to be used Plaintiffs' computer services, including their wireless connectivity services.

84.     Defendants violated California Penal Code section 502(c)(4) by knowingly accessing and, without permission, adding and/or altering the data from Plaintiffs' computers, that is, application code installed on such computers.

85.     Defendants violated California Penal Code section 502(c)(5) by knowingly and without permission disrupting or causing the disruption of Plaintiffs' computer services or denying or causing the denial of computer services to Plaintiffs through Defendants utilization, without consent, of Plaintiffs' Android Device processing resources and wireless connectivity services.

86.     Defendants violated California Penal Code section 502(c)(6) by knowingly and without permission providing, or assisting in providing—by their causing code to be imbedded in apps and executed on Plaintiffs' Android Devices—a means of accessing Plaintiffs' computers, computer system, and/or computer network.

87.     Defendants violated California Penal Code section 502(c)(7) by knowingly and without permission accessing or causing to be accessed Plaintiffs' computers, computer systems, and/or computer networks.

88.     Defendants violated California Penal Code section 502(c)(8) by knowingly introducing a computer contaminant—their app-imbedded code—into the Plaintiffs' computers, computer systems, and/or computer networks, and doing so to obtain data from

Plaintiffs Android Devices.

89.     In addition to other losses detailed herein, Plaintiffs have suffered irreparable injury from these unauthorized acts of disclosure in that their information has been harvested, retained, and used by Defendants, and which information continues to be retained and used by Defendants; due to the continuing threat of such injury and, in addition, the threat that Defendants will transfer Plaintiffs' information to yet other third parties, Plaintiffs have no adequate remedy at law, entitling them to injunctive relief.

90.     Plaintiffs have additionally suffered loss by reason of these violations, including, without limitation, violation of the right of privacy.

91.     As a direct and proximate result of Defendants' unlawful conduct within the meaning of California Penal Code section 502, Defendants have caused loss to Plaintiffs in an amount to be proven at trial. Plaintiffs are also entitled to recover their reasonable attorneys' fees pursuant to California Penal Code section 502(e).

92.     Plaintiffs and the Plaintiffs seek compensatory damages, in an amount to be proven at trial, and injunctive or other equitable relief.

93.     Plaintiffs have suffered irreparable and incalculable harm and injuries from Defendants' violations. The harm will continue unless Defendants are enjoined from further violations of this section. Plaintiffs have no adequate remedy at law.

94.     Such harms will continue unless Defendants are enjoined from engaging in data collection without notice or consent.

95.     Plaintiffs and the Plaintiffs are entitled to punitive or exemplary damages pursuant to Cal. Penal Code section 502(e)(4) because Defendants' violation were willful and, on information and belief, Defendants is guilty of oppression, fraud, or malice as defined in Cal. Civil Code section 3294.

96.     Defendants' unlawful access to Plaintiffs' Android Devices and personal information has caused Plaintiffs irreparable injury. Unless restrained and enjoined, Defendants will continue to commit such acts. Plaintiffs' remedy at law is not adequate to compensate it for these inflicted and threatened injuries, entitling Plaintiffs to remedies including injunctive relief

as provided by California Penal Code section 502(e).

### THIRD CLAIM FOR RELIEF

### TRESPASS TO CHATTEL

97.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

98.    The common law prohibits the intentional intermeddling with personal property, including an Android Device, in possession of another that results in the deprivation of the use of the personal property or impairment of the condition, quality, or usefulness of the personal property.

99.    By engaging in the acts alleged in this complaint without the authorization or consent of Plaintiffs, Defendants dispossessed Plaintiffs from use and/or access to their Android Devices, or parts of them, by causing the installation of code that resulted in the transfer of personal information and utilization of device and wireless connectivity resources to which Plaintiffs did not consent. Further, these acts impaired the use, value, and quality of Plaintiffs' Android Devices. Defendants' acts constituted an intentional interference with the use and enjoyment of the Android Devices. By the acts described above, Defendants repeatedly and persistently engaged in trespass to personal property in violation of the common law.

100.    Without Plaintiffs' consent, or in excess of any consent given, Defendants knowingly and intentionally accessed and/or caused the access to Plaintiffs' property, thereby intermeddling with Plaintiffs' right to possession of the property and causing injury to Plaintiffs and the members of the Class.

101.    Defendants engaged in deception and concealment to gain access to Plaintiffs' Android Devices.

102.    Defendants engaged in the following conduct with respect to Plaintiffs' Android Devices: Defendants accessed and obtained control over Android Devices; Defendants caused the installation of code on Plaintiffs' Android Devices; Defendants programmed the operation of their code to function and operate without notice to or consent from Plaintiffs.

103.    All these acts described above were acts in excess of any authority Plaintiffs granted when downloading apps, and none of these acts was in furtherance of the advertised

functionality of such apps. By engaging in deception and misrepresentation, whatever authority or permission Plaintiffs may have granted to Defendants did not apply to Defendants' conduct.

104.   Defendants' installation and operation of its program used, interfered, and/or intermeddled with Plaintiffs' Android Device systems. Such use, interference and/or intermeddling was without Plaintiffs' consent or, in the alternative, in excess of Plaintiffs' consent.

105.   Defendants' installation and operation of its program constituted trespass, nuisance, and an interference with Plaintiffs' chattels, to wit, their Android Devices.

106.   Defendants' installation and operation of their impaired the condition and value of Plaintiffs' Android Devices.

107.   Defendants trespass to chattels, nuisance, and interference caused real and substantial damage to Plaintiffs.

108.   As a direct and proximate result of Defendants' trespass to chattels, nuisance, interference, unauthorized access of and intermeddling with Plaintiffs' property, Defendants injured and impaired the utility and value of Plaintiffs' Android Devices, as follows:

   a.   by consuming the resources of and/or degrading the performance of Plaintiffs' Android;

   b.   by diminishing the use of, value, speed, capacity, and/or capabilities of Plaintiffs' Android Devices;

   c.   by devaluing, interfering with, and/or diminishing Plaintiffs' possessory interest in their Android Devices;

   d.   by altering and controlling the functioning of Plaintiffs' Android Devices;

   e.   by infringing on Plaintiffs' right to exclude others from their Android Devices;

   f.   by infringing on Plaintiffs' right to determine, as owners of their Android Devices, which program functionality should be installed and operating on their Android Devices; and

Class Action Complaint                    15

g. by compromising the integrity, security, and ownership of Plaintiffs' Android Devices.

### FOURTH CLAIM FOR RELIEF

### VIOLATIONS OF THE UNFAIR COMPETITION LAW (UCL),

### CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200, *et seq.*

109. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

110. In violation of California Business and Professions Code, Section 17200 *et seq.*, Defendants' conduct in this regard is ongoing and includes, but is not limited to, Defendants' failure to disclosure their business conduct, and as otherwise set forth above.

111. By engaging in the above-described acts and practices, Defendants have committed one or more acts of unfair competition within the meaning of the Unfair Competition Law and, as a result, Plaintiffs have suffered injury-in-fact and have, as set forth above.

**A.     Unlawful Business Act and Practices**

112. Defendants' business acts and practices are unlawful, in part, because they violate California Business and Professions Code, Section 17500, *et seq.*, which prohibits false advertising, in that Defendants materially omitted disclosing their activities to Plaintiffs, even as they were routinely engaged in undisclosed communications with Plaintiffs' Android Devices for purposes of acquiring Plaintiffs' personal information. Defendants engaged in such untrue and misleading statements relating to Defendants' performance of services and provision of goods and with the intent to induce Plaintiffs to continue using the apps that permitted Defendants' taking of personal information, and regarding which statements Defendants knew or which, and by the exercise of reasonable care Defendants should have known, were untrue and misleading.

113. Defendants' business acts and practices are also unlawful in that, as set forth herein, they violate the Computer Crimes Law, California Penal Code, Section 502, *et seq.*; False Advertising, California Business and Professions Code, Section 17500; and the Computer Fraud and Abuse Act, Title 18, United States Code, Section 1030, *et. seq.*

114. Defendants' business acts and practices are also unlawful in that they violate the

---

Class Action Complaint                    16

California Constitution, Article I, Section 1, which articulates the inalienable right to pursue and obtain privacy, in that Defendants interfered with and obstructed Plaintiffs' rights and reasonable expectations regarding their privacy.

115.   Defendants are therefore in violation of the unlawful prong of the Unfair Competition Law.

**B.   Unfair Business Act and Practices**

116.   Defendants' business acts and practices are unfair because they have caused harm and injury-in-fact to Plaintiffs and for which Defendants have no justification other than to increase, beyond what Defendants would have otherwise realized, revenue-generating information assets.

117.   Defendants' conduct lacks reasonable and legitimate justification in that Defendants have benefited from such conduct and practices while Plaintiffs have been misled as to the nature and integrity of Defendants' products and services and have, in fact, suffered material disadvantage regarding their interests in the privacy and confidentiality of their personal information and the economic benefit and opportunities arising from Plaintiffs' own abilities to use their information in the marketplace.

118.   Defendants' conduct offends public policy in California tethered to the state constitutional right of privacy and California's statutory recognition of the need for Consumers to be informed in the marketplace and equipped to protect their own privacy interests, so that they may make informed decisions in their choices of merchants and other means of safeguarding their privacy, instead of being subjected to information assymetries created by merchants for such merchants' own gain.

119.   In addition, each Defendants' *modus operandi* constitutes a sharp practice in that Defendants knew and should have known that Consumers care about the status of personal information and privacy but are unlikely to be aware of and able to detect the means by which Defendants were conducting their collection of personal information and subsequently using that information for their own advantage, in ways Consumers would have sought to avoid had they known of Defendants' activities. Defendants are therefore in violation of the unfairness

prong of the Unfair Competition Law.

120.    Defendants' acts and practices were fraudulent within the meaning of the Unfair Competition Law because they were likely to mislead the members of the public to whom they were directed.

### FIFTH CLAIM FOR RELIEF

### BREACH OF IMPLIED CONTRACT

121.    Plaintiffs hereby incorporate by reference the allegations contained in all of the preceding paragraphs in this complaint.

122.    Based on Defendants' actions in acquiring Plaintiff's and Plaintiffs' personal information, an implied contract existed between Defendants and Plaintiffs, to which Defendants' assent may be fairly inferred, and under which contract Defendants were unjustly enriched.

123.    Plaintiffs have conferred a benefit upon Defendants which have, directly or indirectly, received and retained personal information of Plaintiffs, as set forth herein. Defendants have received and retained information that is otherwise private, confidential, and not of public record, and/or have received revenue from the provision, use, and or trafficking in the sale of such information.

124.    Defendants appreciate and/or have knowledge of said benefit.

125.    Under principles of equity and good conscience, Defendants should not be permitted to retain the information and/or revenue that they acquired by virtue of their unlawful conduct. All funds, revenue, and benefits received by them rightfully belong to Plaintiffs, which Defendants have unjustly received as a result of their actions.

126.    Plaintiffs have no adequate remedy at law.

### VII.  DEMAND FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment against Defendants and that the Court may:

A.    certify this case as a Class action on behalf of the Class defined above, appoint Plaintiff as Class representative, and appoint his counsel as Class counsel;

B.    declare that Defendants' actions violate the statutes and common-law jurispru-

dence set forth above;

C.    award injunctive and equitable relief as applicable to the Class *mutatis mutandis*, including:

    i.    prohibiting Defendants from engaging in the acts alleged above;

    ii.    requiring Defendants to provide reasonable notice and choice to Consumers regarding Defendants' data collection, profiling, merger, and deanonymization activities;

    iii.    requiring Defendants to disgorge to Plaintiffs and Class Members or to whomever the Court deems appropriate all of Defendants' ill-gotten gains, inasmuch as Plaintiffs' personal information and device and connectivity resources constitute benefits that have been conferred upon Defendants and through which Defendants have reduced costs they might otherwise have incurred and through which Defendants have obtained revenue, all of which are benefits that Defendants appreciate and of which they have knowledge; such that, under principles of equity and good conscience, Defendants should not be permitted to retain benefits they have acquired through their unlawful conduct and that, instead, all funds, revenue, and benefits received by them should rightfully belong to Plaintiffs, who have no adequate remedy at law;

    iv.    requiring Defendants to delete all data from and about onsumers that it collected and/or acquired from third parties through the acts alleged above;

    v.    requiring Defendants to provide Plaintiffs and other Plaintiffs reasonable means to decline, permanently, participation in Defendants' collection of data from and about them;

    vi.    awarding Plaintiffs full restitution of all benefits wrongfully acquired by Defendants through the wrongful conduct alleged

above; and

       vii.   ordering an accounting and constructive trust to be imposed on the data from and about Plaintiffs and Class Members and on funds or other assets obtained by unlawful means as alleged above, to avoid dissipation, fraudulent transfers, and/or concealment of such assets by Defendants;

D.   award damages, including statutory damages where applicable, to Plaintiffs in an amount to be determined at trial;

E.   award restitution against Defendants for all money to which Plaintiffs are entitled in equity;

F.   restrain, by preliminary and permanent injunction, Defendants, their officers, agents, servants, employees, and attorneys, and those participating with them in active concert, from identifying Consumers online without prior notice and consent, and whether by personal or pseudonymous identifiers, and from monitoring, accessing, collecting, transmitting, and merging with data from other sources any information from or about such Consumers;

G.   award Plaintiffs their reasonable litigation expenses and attorneys' fees; pre- and post-judgment interest to the extent allowable; restitution; disgorgement and other equitable relief as the Court deems proper; compensatory damages sustained by Plaintiffs; statutory damages, including punitive damages; and permanent injunctive relief prohibiting Defendant from engaging in the conduct and practices complained of herein; and

for such other and further relief as this Court deems just and proper.

1

2   Date:   May 3, 2011                                   Respectfully submitted,

3                                                         PARISI & HAVENS LLP

4
                                               By: _____
5
                                                      David C. Parisi (SBN 162248)
6                                                     dcparisi@parisihavens.com
                                                      15233 Valleyheart Drive
7                                                     Sherman Oaks, California 91403
                                                      Telephone:  (818) 990-1299
8                                                     Facsimile:  (818) 501-7852

9   Scott A. Kamber (not admitted)
    David A. Stampley (not admitted)
10  skamber@kamberlaw.com
    dstampley@kamberlaw.com
11  KAMBERLAW, LLC
    100 Wall Street, 23rd Floor
12  New York, New York 10005
    Telephone: (212) 920-3072
13  Facsimile:  (212) 202-6364

14
    Avi Kreitenberg (SBN 266571)
15  KAMBERLAW, LLP
    akreitenberg@kamberlaw.com
16  1180 South Beverly Drive, Suite 601
    Los Angeles, CA 90035
17  Telephone: (310) 400-1050
    Facsimile:  (310) 400-1056
18

19  Suzanne Havens Beckman (SBN 188814)
    shavens@parisihavens.com
20  PARISI & HAVENS LLP
    15233 Valleyheart Drive
21  Sherman Oaks, California 91403
    Telephone: (818) 990-1299
22  Facsimile:  (818) 501-7852

23  Counsel for Plaintiffs

24

25

26

27

28

Class Action Complaint                    21

1

2

**JURY TRIAL DEMAND**

Plaintiff hereby demands a trial by jury of all issues so triable.

3

Date:   May 3, 2011                                    Respectfully submitted,

4

PARISI & HAVENS LLP

5

6

By: _____

7

David C. Parisi (SBN 162248)

dcparisi@parisihavens.com

8

15233 Valleyheart Drive

Sherman Oaks, California 91403

9

Telephone:  (818) 990-1299

Facsimile:   (818) 501-7852

10

11

Scott A. Kamber (not admitted)

David A. Stampley (not admitted)

12

skamber@kamberlaw.com

dstampley@kamberlaw.com

13

KAMBERLAW, LLC

100 Wall Street, 23rd Floor

14

New York, New York 10005

Telephone:  (212) 920-3072

15

Facsimile:   (212) 202-6364

16

Avi Kreitenberg (SBN 266571)

17

KAMBERLAW, LLP

akreitenberg@kamberlaw.com

18

1180 South Beverly Drive, Suite 601

Los Angeles, CA 90035

19

Telephone:  (310) 400-1050

Facsimile:   (310) 400-1056

20

21

Suzanne Havens Beckman (SBN 188814)

shavens@parisihavens.com

22

PARISI & HAVENS LLP

15233 Valleyheart Drive

23

Sherman Oaks, California 91403

Telephone:  (818) 990-1299

24

Facsimile:   (818) 501-7852

25

Counsel for Plaintiffs

26

27

28

Class Action Complaint                    22